**SO ORDERED.**

**SIGNED this 15 day of January, 2013.**

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

JOE HENRY PLILER,                               CHAPTER 13
KATHERINE MARIE PLILER,              CASE NO. 12-05844-8-RDD

    DEBTORS

## ORDER

Pending before the Court is the Trustee's Objection to Confirmation and Motion to Dismiss filed by the Chapter 13 Trustee (the "Trustee") on October 29, 2012, the Memorandum of Law in Support of Trustee's Objection to Debtors' Confirmation and Motion to Dismiss filed by the Trustee on November 27, 2012, the Amended Memorandum of Law in Support of Trustee's Objection to Debtors' Confirmation and Motion to Dismiss filed by the Trustee on December 21, 2012, the Response to Trustee's Objection to Confirmation and Motion to Dismiss filed by Joe Henry Pliler and Katherine Marie Pliler (the "Debtors") on October 31, 2012, and the Memorandum in Opposition of Trustee's Objection to Debtors' Confirmation and Motion to Dismiss filed by the

Debtor on December 5, 2012. The Court conducted a hearing on this matter on December 10, 2012 in Raleigh, North Carolina.

The Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on August 10, 2012. Robert R. Browning was duly appointed as the Trustee, and filed the Trustee's Objection to Confirmation and Motion to Dismiss for failure to file a plan in good faith and failure to pay an amount necessary during the applicable commitment period. The Debtors have filed the required Schedules A through J, a Statement of Financial Affairs, a master Mailing Matrix, and a Chapter 13 Statement of Income and Calculation of Commitment Period and Disposable Income (hereinafter the "B22C"). After completing Parts I and II of the B22C, the Debtors calculated their household income to be above the median family income in North Carolina for comparably sized households and listed disposable income of negative $291.20 on B22C.

The Debtors filed a proposed Chapter 13 plan pursuant to 11 U.S.C. § 1321 (the "Plan"). The Plan proposes to pay $1,784.00 for fifteen (15) months and then $1,547.00 for forty (40) months. The total of plan payments is $88,640.00 and consists of $3,335.00 in attorneys' fees.

Schedule F shows the Debtors have approximately $24,008.31 in unsecured claims. Schedule I shows a combined average monthly income of $4,292.34. Schedule J shows average

monthly expenses of $2,759.33 leaving a monthly net income of $1,533.01.[1]

The Debtors' Plan contains language commonly referred to as "early termination language," and states:

> This Chapter 13 Plan will be deemed complete and shall cease and a discharge shall be entered, upon payment to the Trustee of a sum sufficient to pay in full: (A) Allowed administrative priority claims, including specifically the Trustee's commissions and attorneys' fees and expenses ordered by the Court to be paid to the Debtor's Attorney, (B) allowed secured claims (including but not limited to arrearage claims), excepting those which are scheduled to be paid directly by the Debtor "outside" the plan, (C) Allowed unsecured priority claims, (D) Cosign protect consumer debt claims (only where the Debtor proposes such treatment), (E) Post-petition claims allowed under 11 U.S.C. § 1305, (F) The dividend, if any, required to be paid to non-priority general unsecured creditors (not including priority unsecured creditors) pursuant to 11 U.S.C. § 1325(b)(1)(B), and (G) Any extra amount necessary to satisfy the "liquidation test" as set forth in 11 U.S.C. § 1325(a)(4).

---

[1]

| Proposed Plan | Unsecured Debt | Dividend to Unsecured Creditors | Early Termination | Form B22C | Sch. I - Sch. J |
|---|---|---|---|---|---|
| a. $1,784 x 15 months, then $1,547 x 40 months = $88,640<br>b. Attorney's Fees = $3,335<br>c. Trustee's Commission = $3,988.80<br>d. Payment to Secured Creditors = $1,429 x 55 = $78,595<br>e. Payment to Unsecured Creditors with early termination language = $0 | $24,008.31 | 0% | Yes - included in proposed plan | -$291.20 (above-median) | $1,533.01 |

Because of the early termination language, the plan will likely last fifty-five (55) months or less.

## **DISCUSSION**

The issue before the Court is whether these debtors, who have zero or less disposable income, as determined by Form B22C, may obtain confirmation of a Chapter 13 Plan, which in effect will terminate before the respective applicable commitment period when the plan proposes to discharge substantial amounts in unsecured debt and pay only the Trustee commission and the debtor's attorney fees.

The Court shall confirm a Chapter 13 plan if the provisions of 11 U.S.C. § 1325(a) are met. In cases where an objection to confirmation has been made by either the trustee or an unsecured creditor the court may not confirm a plan unless:

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B).

11 U.S.C. §1325(b)(4) defines "applicable commitment period" as

> (A) subject to paragraph (B), shall be –
>     (i) 3 years; or
>     (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than –
>         (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>         (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>         (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family

    of 4 or fewer individuals, plus $625 per month for each individual in excess of 4; and

(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

The phrase "projected disposable income" is not defined in the Bankruptcy Code. The Code defines "disposable income" as "current monthly income to be received by the debtor[2] . . . less amounts reasonably necessary to be expended . . . ." 11 U.S.C. § 1325(b)(2). The phrase "amounts reasonably necessary to be expended" includes the full amount needed for "maintenance or support," for a debtor whose income is below median for his or her state, but for an above-median-income debtor, only certain expenses are included. *Hamilton v. Lanning*, 130 S.Ct. 2470 177 L.Ed.2d 23 (2010).

This Court has previously discussed "projected disposable income" and its interplay with § 1325(b)(2) in *In re Musselman*, 379 B.R. 583 (Bankr. E.D.N.C. 2008)[3] and in *In re Alexander*, 344

---

[2]The term "current monthly income" –
  (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on–
    (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
    (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
  (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent) . . . .
11 U.S.C. § 101(10A)

[3]In *In re Musselman*, the Chapter 13 debtor's Form B22C indicated that he was an above-median income debtor and had a monthly disposable income of negative $255.80. The debtor proposed plan payments for 55 months. eCast Settlement Corporation, the holder of two

B.R. 742, 749 (Bankr. E.D.N.C. 2006) (finding that to calculate a Chapter 13 debtor's projected disposable income, "one simply takes the calculation mandated by § 1325(b)(2) and does the math," while recognizing the debate and split of authority among bankruptcy courts).

Subsequent to the decisions in *Musselman v. eCast Settlement Corp.*, 394 B.R. 801, 814 (E.D.N.C. 2008) and *In re Alexander,* 344 B.R. 742, 749 (Bankr. E.D.N.C. 2008) the Supreme Court of the United States has interpreted the phrase "projected disposable income" in *Hamilton v. Lanning*, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010). There, the above-median-income Chapter 13 debtor, in the six months preceding the bankruptcy filing, received a "one-time buyout from her former employer" greatly increasing the debtor's average monthly income for the sixth month period preceding the filing date. *Id.* at 2470. Post-petition, however, the debtor's income was drastically reduced with her new job. *Id.* Her monthly expenses calculated pursuant to § 707(b)(2), were

---

unsecured claims against the debtor, objected to the terms of the plan insisting the debtor's plan should be for five years or 60 months.

The Bankruptcy Court held that the length of the applicable commitment period is tied to the above or below-median current monthly income of the debtor, not to the projected disposable income of the debtor. The applicable commitment period must be three years for below-median income debtors or five years for above-median income debtors, unless debtors pay all allowed unsecured claims in full, prior to the expiration of the applicable commitment period. The above-median income debtor must propose a plan for payments over a period of five years, unless unsecured creditors are paid in full over a shorter period. Both the debtor and the creditor appealed the bankruptcy court's order to the District Court.

The District Court reversed the bankruptcy court's decision as to the length of the debtor's plan. The District Court held that the applicable commitment period time requirements do not apply to above-median debtors with zero or negative "projected disposable income." *Musselman v. eCast Settlement Corp.*, 394 B.R. 801, 814 (Bankr. E.D.N.C. 2008). Further, after analyzing both the multiplicative approach, which finds "'projected disposable income' intimately related to 'disposable income'" as identified in *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006), and the "forward-looking approach," which "require[s] a forward looking inquiry to determine what a debtor's 'projected disposable income' will be during the pendency of the chapter 13 plan," the District Court held that "projected disposable income" is equivalent to the debtor's "disposable income" as defined in 11 U.S.C. § 1325(b)(2). *Id.* at 808-13.

6

$4,228.71 and her "disposable income" as reported on Form B22C was $1,114.98. On her Schedule I, she reported an income below the state median of $1,922.00 per month and on her Schedule J she reported actual monthly expenses of $1,722.97, resulting in a monthly disposable income of $149.03. *Id.* The debtor filed a plan that required a $144.00 monthly payment for thirty-six (36) months. *Id.* The trustee objected to confirmation on the ground that the debtor was not committing all of her projected disposable income to the repayment of creditors. *Id.* The trustee advocated for a mechanical approach to calculating projected disposable income, which involves multiplying disposable income, as calculated on Form B22C, by the number of months in the commitment period. *Id*. The bankruptcy court endorsed the debtor's proposed monthly payment of $144.00 but required a sixty (60) month plan period. *Id.* at 2471. The trustee appealed the order to the Tenth Circuit Bankruptcy Appellate Panel, which affirmed. *Id*. The trustee then appealed to the Tenth Circuit Court of Appeals, which affirmed. *Id*. The Supreme Court granted certiorari. *Id.*

The Supreme Court held that when a bankruptcy court calculates a Chapter 13 debtor's projected disposable income, the court may "account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 2478. In coming to this conclusion the Supreme Court discussed the phrase "projected disposable income." In its discussion, the Court noted

> the term 'projected' is not defined, and in ordinary usage future occurrences are not 'projected' based on the assumption that the past will necessarily repeat itself. For example, projections concerning a company's future sales or the future cash flow from a license take into account anticipated events that may change past trends.

*Id.* at 2471. The Court noted "[t]here is no dispute that [the debtor] would in fact receive far less than [the calculated amount] per month in disposable income during the plan period, so [the

7

trustee's] projection does not accurately reflect 'income to be received' during that period." *Id.* at 2474. The Court recognized that Congress rarely uses the term "projected" to refer to simple multiplication, and "when Congress wishes to mandate simple multiplication, it does so unambiguously—most commonly by using the term 'multiplied.'" *Id.* at 2472. The Court reasoned that the mechanical approach "clashes repeatedly with the terms of 11 U.S.C. § 1325," noting that the language of § 1325(b)(1)(B) "'to be received during the applicable commitment period' strongly favors the forward-looking approach," and that the mechanical approach "effectively reads this phrase out of the statute when a debtor's current disposable income is substantially higher than the income that the debtor predictably will receive during the plan period." *Id.* at 2474.[4]

Further, the Court noted that § 1325(b)(1) directs bankruptcy courts to determine projected disposable income as of the *effective date* of the plan, rather than the filing date of the plan. The Court recognized that not considering the debtor's changed circumstances would be inconsistent with the language of 11 U.S.C. § 1325 and would produce "senseless results" such as creditors being denied "payments that the debtor could easily make," or denying "the protection of Chapter 13 to debtors who meet the chapter's main eligibility requirements." *Id.* at 2475-2476. The Court noted that "[i]n cases in which the debtor's disposable income is higher during the plan period, the mechanical approach would deny creditors payments that the debtor could easily make." *Id.* at 2476. The Court endorsed a "forward-looking approach" allowing the bankruptcy court or the trustee to take into consideration changes in a debtor's income that are "known or virtually certain at the time

---

[4]The Supreme Court's adoption of the forward-looking approach effectively reverses the holding of the United States District Court for the Eastern District of North Carolina in *Musselman v. eCast Settlement Corp.*, which adopted the multiplication or mechanical approach, where disposable income and projected disposable income are the same. *See supra* note 5.

8

of confirmation." *Id.* at 2478.

Following *Lanning,* the Supreme Court in *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011), held a debtor may not deduct on form B22C an IRS Local Standard deduction for an expense which the debtor will not incur during the life of the plan. *Id.* at 725. In making its determination the Court noted that an "expense amount is 'applicable' within the plain meaning of the statute when it is appropriate, relevant, suitable, or fit." *Id*. at 724. The Court noted that "[i]f a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not 'reasonably necessary' within the meaning of the statute." *Id.* at 725. The Court cited *Lanning*, when commenting on Congress' intent in passing BAPCPA:

> Congress designed the means test to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford.' H.R. Rep., at 2. This purpose is best achieved by interpreting the means test, consistent with the statutory text, to reflect a debtor's ability to afford repayment. Cf. *Hamilton*, 560 U.S. at ___, 130 S.Ct., at 2475-2476 (rejecting an interpretation of the Bankruptcy Code that 'would produce [the] senseless resul[t] of 'deny[ing] creditors payments that the debtor could easily make'). Requiring a debtor to incur the kind of expenses for which he claims a means-test deduction thus advances the BAPCPA's objectives.

*Id.*

Subsequent to the Supreme Court's decision in *Lanning* and *Ransom*, other courts have followed suit allowing for accounting of changes in both income and expenses when determining "projected disposable income." The Fourth Circuit in *Morris v. Quigley* addressed the issue of "whether a debtor's 'projected disposable income' must be equal to the debtor's 'disposable income' for purposes of satisfying § 1325(b)(1)(B), or whether the projected disposable income should reflect changes that have occurred or that will occur and that are known as of the date of confirmation." 673 F.3d 269, 272 (4th Cir. 2012). Specifically, the court addressed whether "projected disposable income" should take into account the debtor's intention to surrender two vehicles to her secured

9

creditors. *Id.* at 270. The Fourth Circuit relied on *Lanning* and noted the Supreme Court adopted a "forward-looking approach" and held that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 273 (citation omitted). The court found that "failing to account for [known decreases in a debtor's expenses] and thereby denying the unsecured creditors payments that the [d]ebtor clearly could make would be just the sort of 'senseless result[]' that the *Lanning* Court rejected." *Id.* at 274 (citing *Hamilton v. Lanning*, 130 S.Ct. 2464, 2475, 177 L.Ed.2d 23 (2010)). The debtor in the case attempted to distinguish *Lanning* by arguing that *Lanning* involved a change in income while the debtor's case involved a change in expenses. *Id.* The court found that the principles articulated in *Lanning* applied equally to both situations. *Id.*

The Bankruptcy Court for the Eastern District of North Carolina has recently commented on the *Lanning, Ransom*, and *Quigley* opinions and noted that

> taken together, this recent line of cases departs from the strict formulaic approach to the means test and takes into account what is likely to occur in the future. Applying this reasoning furthers the purpose of the means test, "which was intended to 'ensure that those who can afford to repay some portion for their unsecured debts be required to do so.'"

*In re Sterrenberg*, Case No. 11-08543-8-RDD, 2012 WL 1835183, at *5 (Bankr. E.D.N.C. May 18, 2012) (citing *In re Harris*, 353 B.R. 304, 309 (Bankr. E.D. Okla. Oct. 13, 2006); *In re Krawczyk*, Case No. 11-09596-8-JRL, 2012 WL 3069437 at *5 (Bankr. E.D.N.C. July 27, 2012).

The same principles laid out in *Lanning, Ransom*, and *Quigley*, have been applied when determining

> whether the income that becomes available after the debtors have fully repaid their 401(k) loans (which is allowed by 11 U.S.C. § 1322(f)) is "projected disposable income" to be paid to the unsecured creditors or whether the income can be used to begin making voluntary contributions to the debtors' 401(k) plans and deemed

10

>excludable from both disposable income and property of the estate under 11 U.S.C. § 541(a)(1) and (b)(7).

*Seafort v. Burden*, 669 F.3d 662, 663 (6th Cir. 2012). The Sixth Circuit held that "income made available once Debtors' 401(k) loan repayments are fully repaid is properly committed to the debtors' respective Chapter 13 plans for distribution to the unsecured creditors and may not be used to make voluntary retirement contributions." *Id*. at 674. While the Sixth Circuit relied on an analysis of §§ 541(b)(7), 541(a)(1), and 1306(a) to reach its decision, the court did cite to the Congressional intent and purpose of BAPCPA "to ensure that debtors devote their full disposable income to repaying creditors and maximizing creditor recoveries." *Id.* at 674 (citations omitted).

While the Supreme Court did not address the definition of the phrase "applicable commitment period" in *Lanning*, other courts have cited the Supreme Court decision to support a temporal interpretation of the "applicable commitment period." The Eleventh Circuit in *In re Tennyson*, 611 F.3d 873 (11th Cir. 2010), held that the applicable commitment period mandates a minimum duration for an above-median income debtor's Chapter 13 plan. *Id.* at 874. The facts of *In re Tennyson* involved an above-median income debtor whose Form B22C indicated that he had negative disposable income. *Id*. at 875. Using the multiplier approach, this debtor determined that he had no applicable commitment period since he had no projected disposable income. *Id.* The debtor proposed a three-year plan and the Chapter 13 Trustee objected. *Id.* The Eleventh Circuit relied on *Lanning's* rationale to support its holding that the provisions of Title 11 setting out the applicable commitment period require an above-median income debtor to remain in a Chapter 13 bankruptcy for five (5) years. *Id*. at 878. The Circuit Court reasoned that "*Lanning* does not directly comment on the definition of 'applicable commitment period' but what it does indicate is that §1325(b) is not a strict mechanical formula existing in a vacuum." *Id*. With such a flexible approach,

11

the Eleventh Circuit concluded that "in order for 'applicable commitment period' to have any definite meaning, its definition must be that of a temporal term derived from § 1325(b)(4)." *Id*. at 879. The Eleventh Circuit did not make a distinction between positive and negative disposable income and applied the temporal approach to all debtors. *Id.*

The Sixth Circuit in *Baud v. Carroll* noted that in *Lanning,* the Supreme Court relied on the "lack of explicit multiplier language in §1325(b)(1)" to adopt a forward-looking approach and that a similar lack of multiplier language supports a temporal reading of §1325(b). *Baud v. Carroll*, 634 F.3d 327, 339 (6th Cir. 2011). There, the Sixth Circuit relied on the language in *Lanning* and *Ransom* to require a five (5) year applicable commitment period upon the debtor whose disposable income was less than zero. The court stated:

> This brings us to the issue of whether there is an exception to the temporal requirement set forth in § 1325(b) for debtors with zero or negative projected disposable income. . . .
>
> In addressing this difficult issue, we begin once again with the language of the statute itself. . . . Under the express language of § 1325(b)(4), the applicable commitment period does not depend on the amount of the debtor's projected disposable income. To the contrary, the applicable commitment period depends on the current monthly income of the debtor and the debtor's spouse combined. . . . Accordingly, we conclude that the better reading of § 1325(b) is that the temporal requirement of the applicable commitment period applies to debtors facing a confirmation objection even if they have zero or negative disposable income.

*Id.* at 350-351 (emphasis added).

Relying on *Lanning* and *Ransom*, the Sixth Circuit stated:

> [A]s the Supreme Court recognized in both *Ransom* and *Lanning,* the legislative history makes clear that the focus of Congress in enacting BAPCPA was on maximizing the amount of disposable income that debtors would pay to creditors. And there are numerous circumstances in which disposable income might become available to the Appellees and to other debtors after confirmation, even those who have zero or negative projected disposable income as of confirmation. . . .

12

*Id.* at 356.

Courts that have applied the mandatory applicable commitment period to debtors with zero or negative projected disposable income have concluded that this approach would best serve BAPCPA's goal of ensuring that debtors repay creditors the maximum amount they can afford. *See, e.g., In re Tennyson*, 611 F.3d 873, 879 (11th Cir. 2010); *In re Moose*, 419 B.R. 632, 635 (Bankr. E.D.Va. 2009). Even pre-BAPCPA case law points in favor of a forward-looking approach. In *Hamilton v. Lanning*, the Supreme Court looked to pre-BAPCPA practice and concluded that "we 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.'" *Hamilton v. Lanning*, 130 S.Ct. 2464, 2473, 177 L.Ed.2d 23 (2010) (quoting *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Electric Co.*, 549 U.S. 443, 454, 127 S.Ct. 1199 (2007)). If the Court allowed above and below-median income debtors to exit bankruptcy upon payment of their secured claims, unsecured creditors would not be able to capitalize on any subsequent increase in the debtors' income. *See In re King*, 439 B.R. 129, 139 (Bankr. S.D.Ill., 2010).

Prior to BAPCPA, the Bankruptcy Code required that in order to be confirmed, a Chapter 13 plan had to be proposed for a minimum duration of three (3) years unless unsecured claims were paid in full in a shorter period of time. 11 U.S.C. §1325(b)(1)(2004). Before BAPCPA, the three (3) year period announced in §1325(b)(1) operated as a temporal requirement. *See Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 544 (9th Cir. B.A.P. 2007). After BAPCPA, the applicable commitment period in §1325(b)(1) operates as a temporal requirement. *See Baud v. Carroll*, 634 F.3d 327, 341 (6th Cir. 2011). The addition of the phrase "to unsecured creditors" in §1325(b) does not show a clear indication that Congress intended the courts to depart from their pre-BAPCPA

practice of declining to confirm plans of less than the required length. *Id.* at 342.

BAPCPA's core purpose is to ensure that debtors devote their full disposable income to repaying creditors and maximizing creditor recoveries. *See Ransom v. FIA Card Services*, 131 S.Ct. 716, 725, 178 L.Ed.2d 603 (2011); *see Seafort v. Burden*, 669 F.3d 662, 674 (6th Cir. 2012); *Baud v. Carroll,* 634 F.3d 327, 343 (6th Cir. 2011).

Congress intended to require higher income debtors to pay 100% of unsecured claims or make payments for five (5) years. *Coop v. Frederickson,* 375 B.R. 829, 837 (8th Cir. B.A.P. 2007) (Federman, J., dissenting). Looking at legislative history, the House Report on §1325(b) shows that the applicable commitment period is a durational requirement. *Id.* There are numerous circumstances in which disposable income might become available to the debtors after confirmation, even for those who have zero or negative projected disposable income.

The Bankruptcy Court for the District of Kansas noted:

> [A] negative disposable income number on Form B22C does not conclusively establish the debtor has no disposable income to be received in the Applicable Commitment Period. *Indeed, a feasible plan payment proposal rebuts the presumption that Form B22C alone determines disposable income.* A negative number on Form B22C indicates a plan is not feasible. However, if the debtor can propose a feasible plan payment, then the debtor has shown there is, in fact, disposable income, and the plan must last for five years if his income is above median. Debtors cannot have it both ways. If they want to rely exclusively on Form B22C with a negative disposable income number, then they cannot propose a feasible plan. On the other hand, a feasible plan payment commits debtors to a certain plan length, for the above-median income debtor, of no less than five years.

*In re Beckerle*, 367 B.R. 718, 721 (Bankr. D. Kan. 2007) (citations omitted) (emphasis added).

Additionally, the debtor's "disposable income" may not be the same as the debtor's actual "projected disposable income." *See In re Frederickson*, 545 F.3d 652, 659 (8th Cir. 2008). The debtor's actual expenses may be far less than the regional averages that are assumed in the

14

calculation. *Id.* Thus, a debtor's "projected disposable income" is a forward-looking number and courts should look at things that are likely to occur in the future instead of relying on historical information. *Id*. Clearly, the Supreme Court and a majority of other courts are emphasizing a debtor's *actual ability to pay* in the future, rather than being tied to the mechanical formula, which often produces senseless results.

The United States District Court for the Eastern District of North Carolina addressed the applicable commitment period in *Musselman v. eCast Settlement Corp.*, 394 B.R. 801 (E.D.N.C. 2008). In *Musselman*, the court addressed the issue of whether the applicable commitment period as defined in § 1325(b)(4) determined the length of the plan regardless of the debtor's projected disposable income. The *Musselman* Court held that debtors who have no projected disposable income also have no applicable commitment period for purposes of § 1325(b). *Id.* at 814. While *Musselman* speaks directly to the issue at hand, it was decided pre-*Lanning*. Based on the Supreme Court decisions in *Lanning, Ransom*, and lower court's interpretations of these decisions, this Court is compelled to adopt a forward-looking approach to determine projected disposable income and holds that the Applicable Commitment Period is a temporal requirement for all debtors. Had *Lanning*, *Ransom*, *Quigley,* *Sterrenberg*, *Baud* and *Tennyson* been decided prior to the District Court's holding in *Musselman* regarding the applicable commitment period, this Court concludes the District Court would not have reversed this Court's holding in *In re Musselman*. Surely if Congress intended for plans to contain these early termination provisions, Congress would have certainly said so.[5] Therefore, if unsecured claims are not paid in full prior to thirty-six (36) months,

---

[5] For instance, § 1325(b)(4)(B), is the only statutorily permitted termination of the applicable commitment period prior to the expiration of the applicable commitment period, which provides unsecured creditors must be paid in full.

the applicable commitment period of the plan must be thirty-six (36) months for below median income debtors and sixty (60) months for above median income debtors. 11 U.S.C. § 1325(b)(4)(B).

The adoption by the Supreme Court in *Lanning* of the "forward-looking" approach is totally contradictory to the concept of a plan which includes an early termination provision. "Forward-looking" clearly sanctions and requires a debtor to commit projected disposable income to be received during the applicable commitment period, which means thirty-six (36) months for a below median income debtor, or sixty (60) months for an above median income debtor. *Lanning* proscribes that courts must account for changes in a debtor's income or expenses that are known or virtually certain at the time of confirmation. It is known or virtually certain at the time of confirmation that a debtor proposes to terminate the plan early after payment of attorney's fees and other designated claims. At that point in time, it is known or virtually certain that the debtor will continue to have the income to continue making payments for the duration of the thirty-six (36) or sixty (60) month period and will have the income available after attorney's fees are paid. This court has adopted the forward-looking approach which is the majority view of courts across the nation, which requires a debtor to commit all projected disposable income for thirty-six (36) or sixty (60) months. If disposable income is zero or less, the court must look to projected disposable income based on income minus expenses from Schedules I and J to determine what actual income or expenses are known or virtually certain at the time of confirmation.[6] In addition, it is known or virtually certain that attorney's fees will be paid prior to the expiration of the applicable commitment period, which

---

[6] In *Hamilton v. Lanning*, the debtor's payment of $144.00 per month was not the recalculated disposable income of B22C, but was the projected disposable income determined by taking income from Schedule I minus expenses of Schedule J. This is further confirmation that Schedule I and J may be used by the court to determine projected disposable income.

frees up additional projected disposable income to be received during the applicable commitment period for the benefit of unsecured creditors.

The Debtors' plan proposes to pay $1,784.00 for fifteen (15) months, then $1,547.00 for forty (40) months. With the early termination language, if the Debtors complete their plan as proposed, this will result in an 0% dividend paid to the unsecured creditors. The Court finds the early termination language included in the Debtors' plan is void. The Debtors' plan provides for payments of $1,784.00 for fifteen (15) months and then, after Debtors' attorney's fees are paid, reduces payments to $1,574.00 for forty (40) months. If the Debtors are capable of paying $1,784.00 for fifteen (15) months it would seem they are capable of paying the additional $210.00 for the applicable commitment period of sixty (60) months. By proposing $1,784.00 per month, the Debtors have projected their disposable income they can make available for plan payments. Such treatment would provide an 84% dividend to unsecured creditors.[7] Unless the Debtors provide evidence that it is known or virtually certain they are unable to continue payments of $1,784.00 for sixty (60) months, the plan may be confirmed with a payment of their projected disposable income of $1,784.00 per month for sixty (60) months.

## CONCLUSION

Therefore, the Trustee's Motion to Dismiss is **DENIED**. The Trustee shall file his motion for confirmation for a plan of $1,784.00.00 per month for sixty (60) months with no early

---

[7] $1,784.00 times 60 equals $107,040.00 less attorney fees of $3,335.00, less $78,595.00 for secured creditors; less $4,816.80 for the Trustee commission, leaving $20,293.20 for unsecured creditors, which is an 84% dividend.

termination language.[8]

        **SO ORDERED.**

**END OF DOCUMENT**

---

[8]Since the minimum payment of $1,533.01, initially proposed by the Debtors, does not appear to be available after subtracting Schedule J expenses from Schedule I income, the issue of feasibility pursuant to 11 U.S.C. § 1325(a)(6) may be an issue at a confirmation hearing, if an objection to the Trustee's Motion for Confirmation is filed. The Trustee may also want to examine the expenses claimed by debtor in Schedule J and B22C to determine if all claimed expenses are reasonably necessary to be expended pursuant to 11 U.S.C. § 1325(b)(3) to determine if any additional projected disposable income may be available. At a minimum, the Debtors have projected their disposable income to be $1,784.00 per month.