**SO ORDERED.**

**SIGNED this 21 day of February, 2013.**

**Randy D. Doub**
**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILSON DIVISION**

**IN RE:**

**JOE HENRY PLILER,**
**KATHERINE MARIE PLILER,**

**DEBTORS**

**CHAPTER 13**

**CASE NO. 12-05844-8-RDD**

## ORDER

This matter came before the Court on the Notice of Appeal and Motion for Leave to Appeal Interlocutory Order filed by Joe Henry Pliler and Katherine Marie Pliler (the "Debtors") on January 29, 2013, the Request for Certification of Issue for Direct Appeal filed by Robert R. Browning, the Chapter 13 Trustee (the "Trustee") on February 1, 2013, the Answer in Opposition to Motion for Leave to Appeal filed by the Trustee on February 4, 2013, and the Response in Opposition to Request for Certification of Issue for Direct Appeal filed by the Debtors on February 14, 2013.

## BACKGROUND

The Debtors filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on August 10, 2012. The Debtors filed the required Schedules A through J, a Statement of Financial Affairs, a master Mailing Matrix, and a Chapter 13 Statement of Income and Calculation of

Commitment Period and Disposable Income (hereinafter the "B22C"). After completing Parts I and II of the B22C, the Debtors calculated their household income to be above the median family income in North Carolina for comparably sized households and listed disposable income of negative $291.20 on B22C.

On August 10, 2012, the Debtors filed a proposed Chapter 13 Plan pursuant to 11 U.S.C. § 1321 (the "Plan"). The Plan proposed to pay $1,784.00 for fifteen (15) months, and then $1,547.00 for forty (40) months. The total proposed Plan payments were $88,640.00, and consisted of $3,335.00 in attorneys' fees, $3,988.80 for the Trustee's commission, $78,595.00 to secured creditors, and $0.00 to unsecured creditors. The Debtors' Plan contained language commonly referred to as "early termination language," stating:

> This Chapter 13 Plan will be deemed complete and shall cease and a discharge shall be entered, upon payment to the Trustee of a sum sufficient to pay in full: (A) Allowed administrative priority claims, including specifically the Trustee's commissions and attorneys' fees and expenses ordered by the Court to be paid to the Debtor's Attorney, (B) allowed secured claims (including but not limited to arrearage claims), excepting those which are scheduled to be paid directly by the Debtor "outside" the plan, (C) Allowed unsecured priority claims, (D) Cosign protect consumer debt claims (only where the Debtor proposes such treatment), (E) Postpetition claims allowed under 11 U.S.C. § 1305, (F) The dividend, if any, required to be paid to non-priority general unsecured creditors (not including priority unsecured creditors) pursuant to 11 U.S.C. § 1325(b)(1)(B), and (G) Any extra amount necessary to satisfy the "liquidation test" as set forth in 11 U.S.C. §1325(a)(4).

Because of the early termination language, the Debtors' Plan would likely last fifty-five (55) months or less.

On October 29, 2012, the Trustee filed the Trustee's Objection to Confirmation and Motion to Dismiss (the "Motion to Dismiss") for the Debtors' failure to file a plan in good faith and failure to pay an amount necessary during the applicable commitment period. The Court conducted a

hearing on the Trustee's Motion to Dismiss on December 10, 2012 in Raleigh, North Carolina. On January 15, 2013, the Court entered an order denying the Trustee's Objection to Confirmation and Motion to Dismiss. *In re Pliler*, No. 12-5844-8-RDD, 2013 WL 153846, *1 (Bankr. E.D.N.C. Jan. 15, 2013). In the order, the Court held that the "Applicable Commitment Period" of 11 U.S.C. § 1325(b) is a temporal requirement, which requires an above-median-income debtor to commit to a sixty (60) month plan period; and that projected disposable income is calculated using a "forward-looking approach" and is not one in the same as disposable income as determined on Form B22C. The Court directed the Trustee to file a motion for confirmation for a plan of $1,784.00 per month for sixty (60) months, with no early termination language.

In the Notice of Appeal and Motion for Leave to Appeal Interlocutory Order, the Debtors appeal the January 15, 2013 order to the United States District Court for the Eastern District of North Carolina. The Debtors seek leave to appeal the order that directs the Trustee to file a motion to confirm a plan of $1,784.00 per month for sixty (60) months with no early termination language, as the direction is contrary to the Debtors' plan filed pursuant to 11 U.S.C. § 1321 and contrary to the requirements of 11 U.S.C. §§ 1322, 1325. In the Answer in Opposition to Motion for Leave to Appeal, the Trustee opposes the Debtors' Motion for Leave to Appeal Interlocutory Order and requests that the issue on appeal be certified to the United States Court of Appeals for the Fourth Circuit for direct appeal. In the Response in Opposition to Request for Certification of Issue for Direct Appeal, the Debtors ask the Court to deny the Trustee's request for certification and set the matter for hearing. [1]

---

[1] The Debtors assert that the Trustee's request is not effective because the Trustee failed to file "a timely appeal" pursuant to Fed. Rule Bankr. P. 8001(a)-(b). Fed. Rule Bankr. P. 8001(f)(1). However, the Court finds no requirement that the party making the request for

## DISCUSSION

### I. The Court has Authority to Certify the Appeal to the United States Court of Appeals for the Fourth Circuit Pursuant to Federal Rule of Bankruptcy Procedure 8001(f)(2)(A)

Pursuant to Rule 8001(f) of the Federal Rules of Bankruptcy Procedure, the bankruptcy court, upon request or on its own initiative, may certify an order for direct appeal to a court of appeals provided that the bankruptcy court certifies that one of the requirements of 28 U.S.C. § 158(d)(2)(A) is met. Fed. R. Bankr. P. 8001(f). Section 158(d)(2)(A) allows for direct appeal to the court of appeals from a final order or judgment provided that the bankruptcy court certifies one of the following circumstances exists:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal was taken;
> and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

28 U.S.C. § 158(d)(2)(A).

Rule 8001(f) further provides that before the grant of leave to appeal by the district court, "[o]nly the bankruptcy court may make a certification on request or on its own initiative while the matter is pending in the bankruptcy court." Fed. R. Bankr. P. 8001(f)(2)(A)(i). In the present case, the Debtors filed the Motion for Leave to Appeal Interlocutory Order on January 31, 2013. As of the date of this order, the United States District Court for the Eastern District of North Carolina has

---

certification file the notice of appeal in Rule 8001. The rule only requires that a timely appeal be filed. The Debtors filed the timely Notice of Appeal on January 29, 2013.

not granted the Debtors' motion. Therefore, the matter is still pending in the bankruptcy court and this Court has authority to certify the appeal to the court of appeals.

The Court finds all the requirements of 28 U.S.C. § 158(d)(2)(A) are met and certifies this direct appeal to the United States Court of Appeals for the Fourth Circuit.

## II. Projected Disposable Income

### A. The Judgment, Order, or Decree Involves a Question of Law to Which There is No Controlling Decision of the Court of Appeals for the Circuit or of the Supreme Court of the United States, or Involves a Matter of Public Importance Pursuant to 28 U.S.C. § 158(d)(2)(A)(i)

In the Order, which denied the Trustee's Motion to Dismiss, the Court discussed "projected disposable income" and concluded the Supreme Court holding in *Hamilton v. Lanning*, 506 U.S. ___, 130 S. Ct. 2464, (2010) allowed a bankruptcy court to consider income or expenses that are known or virtually certain at the time of confirmation when calculating projected disposable income. Based on *Lanning*, the Court held determining a debtor's projected disposable income requires considering income and expenses under the "forward-looking approach" rather than the mechanical approach, which involves multiplying a debtor's disposable income under Form B22C to reach a set value the debtor must pay into the plan.

As noted by many courts, the phrase "projected disposable income" is not defined in the Bankruptcy Code. The Code defines "disposable income" as "current monthly income to be received by the debtor[2]. . . less amounts reasonably necessary to be expended . . . ."[3] 11 U.S.C. § 1325(b)(2).

---

[2] The term "current monthly income" –

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on–
>
> > (i) the last day of the calendar month immediately preceding the date of

This Court has previously discussed "projected disposable income" and its interplay with § 1325(b)(2) in *In re Musselman*, 379 B.R. 583 (Bankr. E.D.N.C. 2008) (finding projected disposable income and disposable income have the same meaning for above-median income debtors, which is used to determine the monthly amount to be paid to unsecured creditors through the plan and that the applicable commitment period is tied to the above or below-median current monthly income of a debtor) *rev'd Musselman v. eCast Settlement Corp.*, 394 B.R. 801 (E.D.N.C. 2009) and in *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006) (finding that to calculate a Chapter 13 debtor's projected disposable income, "one simply takes the calculation mandated by § 1325(b)(2) and does the math," while recognizing the debate and split of authority among bankruptcy courts).

Subsequent to the decisions in *Musselman v. eCast Settlement Corp.*, 394 B.R. 801 (E.D.N.C. 2008) and *In re Alexander,* 344 B.R. 742 (Bankr. E.D.N.C. 2006) the Supreme Court of the United States interpreted the phrase "projected disposable income" in *Hamilton v. Lanning*, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010). There, the Supreme Court held that when a bankruptcy court calculates a Chapter 13 debtor's projected disposable income, the court may "account for changes in the debtor's

---

> the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
>
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent) . . . .

11 U.S.C. § 101(10A)

[3] The phrase "amounts reasonably necessary to be expended" includes the full amount needed for "maintenance or support," for a debtor whose income is below median for his or her state, but for an above-median-income debtor, only certain expenses are included. *Hamilton v. Lanning*, 130 S.Ct. 2470 177 L.Ed.2d 23 (2010).

income or expenses that are known or virtually certain at the time of confirmation." *Hamilton v. Lanning*, 130 S. Ct. at 2478.

Following *Lanning,* the Supreme Court in *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011), held a debtor may not deduct on form B22C an IRS Local Standard deduction for an expense that the debtor will not incur during the life of the plan. *Id.* at 725. In making its determination, the Court noted that an "expense amount is 'applicable' within the plain meaning of the statute when it is appropriate, relevant, suitable, or fit." *Id*. at 724

Subsequent to the Supreme Court's decision in *Lanning* and *Ransom*, other courts have followed suit, allowing for accounting of changes in both income and expenses when determining "projected disposable income." The Fourth Circuit, in *Morris v. Quigley*, addressed the issue of "whether a debtor's 'projected disposable income' must be equal to the debtor's 'disposable income' for purposes of satisfying § 1325(b)(1)(B), or whether the projected disposable income should reflect changes that have occurred or that will occur and that are known as of the date of confirmation." 673 F.3d 269, 272 (4th Cir. 2012). Specifically, the court addressed whether "projected disposable income" should take into account the debtor's intention to surrender two vehicles to her secured creditors. *Id.* at 270. The Fourth Circuit relied on *Lanning* and noted the Supreme Court adopted a "forward-looking approach" and held that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 273 (citation omitted). The court found that "failing to account for [known decreases in a debtor's expenses] and thereby denying the unsecured creditors payments that the [d]ebtor clearly could make would be just the sort of 'senseless result[]' that the *Lanning* Court rejected." *Id.* at 274 (citing *Hamilton v. Lanning*, 130 S.Ct. 2464,

2475, 177 L.Ed.2d 23 (2010)).

Amidst this analysis, a majority of courts do not focus on strict construction of § 1325(b)(2) but on the debtor's actual ability to pay and known congressional intent. This shift aligns with the practice of multiplying a debtor's net monthly income by the length of the plan established prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and adjusting for any known or virtually certain changes in income. *Hamilton v. Lanning*, 130 S.Ct. at 2467 (explaining under pre-BAPCPA case law, courts generally multiplied a debtor's current monthly income by the number of months in the commitment period, but had discretion in accounting for known changes); *see also In re Quigley*, 673 F.3d 269 (4th Cir. 2012); *In re Johnson*, 382 Fed. Appx. 503, 507 (7th Cir. 2010) (*Lanning* leaves no doubt that a bankruptcy court has discretion to account for changes in a debtor's income that have either occurred at the time of confirmation or are virtually certain to occur). In *Lanning*, the Supreme Court condones this practice as it stated "the Court 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure,' and Congress did not amend the term 'projected disposable income' in 2005." *Hamilton v. Lanning*, 130 S.Ct. at 2467 (citation omitted). Therefore, by looking at a debtor's actual ability to pay, courts are adopting the purposeful intent of the statute in order to avoid senseless results and to accomplish the stated Congressional intent of requiring debtors who can afford to make payment to creditors do so. *See Ransom v. FIA Card Servs. N.A.*, ___ U.S. ___, 131 S. Ct. 716, 725 ("Congress designed the means test to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford.'") (quoting H.R.Rep No. 109-31, pt. 1 p. 2 (2005)). In *Pliler*, it is known or virtually certain that the Debtors attorneys' fees will be paid after fifteen (15) months. Completion of payments on the attorneys' fees makes

additional disposable income available for payment to unsecured creditors.

**B. The Judgment, Order, or Decree Involves a Question of Law Requiring Resolution of Conflicting Decisions Pursuant to 28 U.S.C. § 158(d)(2)(A)(ii)**

In light of the emerging case law, the issue before this Bankruptcy Court in *Pliler* was whether "projected disposable income" is calculated under the statutory definition of disposable income or whether the Supreme Court's decision in *Lanning* shifts the calculation of projected disposable income away from reliance on the statutory definition of disposable income to a more forward-looking approach. *See In re Alexander*, 344 B.R. 742, 750 (Bankr. E.D.N.C. 2006); *Hamilton v. Lanning*, 130 S. Ct. at 2475; *see also In re Tedder*, No. 12-06232-8-RDD, 2013 WL 145416 (Bankr. E.D.N.C. Jan. 14, 2013); *In re Boyd*, No. 12-06306-8-RDD, 2013 WL 145751 (Bankr. E.D.N.C. Jan. 14, 2013); *In re Mathis*, No. 12-05618-8-RDD, 2013 WL 153833 (Bankr. E.D.N.C. Jan. 15, 2013); *In re Barnes*, No. 12-06613-8-RDD, 2013 WL 153848 (Bankr. E.D.N.C. Jan. 15, 2013). As noted by the Trustee, the order in *Pliler* is in direct conflict with the decisions of the two other Bankruptcy Courts in the Eastern District of North Carolina. *See In re Ballew*, No. 12-04059-8-JRL, 2013 WL 142378 (Bankr. E.D.N.C. Jan. 11, 2013); *In re Temple*, No. 12-4049-8-SWH, 2013 WL 308971 (Bankr. E.D.N.C. Jan. 23, 2013). In *Ballew*, relying on current precedent in the Eastern District of North Carolina, the Honorable J. Rich Leonard, held that where a debtor has zero or no disposable income based on Form B22C, the debtor is not required to comply with the "applicable commitment period" pursuant to § 1325(b)(4).[4] *See, e.g. Mussleman v. eCast Settlement Corp. (In re Musselman)*, 394 B.R. 801 (E.D.N.C. 2008); *In re Alexander*, 344 B.R. 742

[4] The facts in *Ballew* are similar to the facts in *Pliler* in that the proposed Chapter 13 plan would terminate early prior to payments of the debtor's projected disposable income for the full applicable commitment period.

(Bankr. E.D.N.C. 2006). The Court explained that "the term 'applicable commitment period' refers to the time in which the debtor must pay projected disposable income to the trustee, not a minimum plan duration." *In re Ballew*, 2013 WL 142378 at * 10. Since the debtor did not "have any projected disposable income, nothing will be received in the applicable commitment period to make payments to unsecured creditors under the plan." *Id*. In *Temple*, the Honorable Stephani W. Humrickhouse, also denied the Trustee's motion to dismiss in the Chapter 13 proceeding and incorporated Judge Leonard's reasoning in *Ballew*.

In addition to *Ballew* and *Temple*, the two other Bankruptcy Courts entered identical orders finding there is no requirement for a debtor's projected disposable income to be devoted to unsecured creditors for the applicable commitment period where a debtor has zero or negative projected disposable income in a total of thirty-one (31) cases, including *In re Ortega*, Case No. 12-00315-8-JRL. *In re Ballew*, at *10; *In re Temple*, at *1. In order to resolve the issue in the district, the Chapter 13 Trustee filed a similar Request for Certification of Issue for Appeal in *In re Ortega*, in which the trustee requests the Bankruptcy Court certify the following issue for appeal to the Fourth Circuit:

> [w]hether, following the U.S. Supreme Court's decision in *Hamilton v. Lanning* and the line of cases following the *Hamilton v. Lanning* decision, when it is known or virtually certain at the time of confirmation that a debtor's regularly scheduled plan payments will pay allowed administrative, unsecured priority, and non-long-term secured claims proposed to be paid through the debtor's plan in full prior to the expiration of the applicable commitment period, it follows, absent a clear showing that it is now known or virtually certain that the debtor will not be able to continue making such monthly plan payments thereafter, that projected disposable income will exist and, therefore, is known or virtually certain at the time of confirmation to be available prospectively for the remainder of the uncompleted applicable commitment period, to be distributed as a *pro rata* dividend to allowed unsecured claim holders, and therefore, the continuation of such payments for the remainder of the applicable commitment period should be required as a condition of meeting the requirements for plan confirmation under 11 U.S.C. §§ 1322 and 1325?

Request for Cert. of Issue for Appeal, *In re Ortega*, No. 12-00315-8-JRL, at 3 (Bankr. E.D.N.C. Feb. 5, 2013).

Among the various bankruptcy courts within the Fourth Circuit, strict adherence to a mechanical means test is the minority view, as the majority of districts find projected disposable income should be calculated under the forward-looking or similar approach. *In re Wilson*, 397 B.R. 299, 312 (Bankr. M.D.N.C. 2008) (Form B22C is only a starting point for determining a debtor's income for the purposes of 11 U.S.C. § 1325(b)(1)(B) because "the word 'projected' is forward looking."); *In re Houser*, No. 07-50529, 2007 WL 6404340, at *4. (W.D.N.C. Dec. 14, 2007) ("If a debtor can demonstrate that his actual prospective disposable income differs from that elicited in the means test, we use the prospective income in calculating plan payments."); *In re Plumb*, 373 B.R. 429, 430 (Bankr. W.D.N.C. 2007) (Form B22C is the starting point for determining projected disposable income for above-median debtors, but projected disposable income is a forward-looking concept, Schedules I and J should be considered as well); *In re Edmunds*, 350 B.R. 636, 646 (Bankr. D.S.C. 2006) ("the income component of projected disposable income is a forward-looking concept" not limited by the means test but allows consideration of actual income and expenses expected during the plan term); *In re Anstett*, 383 B.R. 380 (Bankr. D.S.C. 2008) (finding disposable income as calculated by the means test establishes a floor for the dividend to unsecured creditors, not the plan payment itself); *In re Herrmann*, No. 10-06523-JW, 2011 WL 576753 (Bankr. D.S.C. Feb. 9, 2011); *In re Kelley*, 416 B.R. 232, 237 (Bankr. E.D. Va. 2009) (when disposable income calculations lead to distorted results, the court should account for the distortion in determining projected disposable income); *In re Minahan*, 374 B.R. 116, 131 (Bankr. W.D. Va. 2008) (following the line of cases that hold "B22C is the starting point, not both the starting and ending point, in determining"

the minimum obligation under a plan); *In re Watson*, 366 B.R. 523, 531 (Bankr. D. Md. 2007) (Form B22C calculations are a debtor's presumptive projected disposable income but a debtor may rebut the presumption by showing the calculations are not commensurate with projected earnings and expenses). Therefore, the holdings in *Ballew* and *Temple* do not just create conflict within the Eastern District of North Carolina, but directly conflict with other bankruptcy courts throughout the Fourth Circuit.

## III. Applicable Commitment Period

### A. The Judgment, Order, or Decree Involves a Question of Law to Which There is No Controlling Decision of the Court of Appeals for the Circuit or of the Supreme Court of the United States, or Involves a Matter of Public Importance Pursuant to 28 U.S.C. § 158(d)(2)(A)(I)

There is no controlling decision of the Fourth Circuit or the Supreme Court of the United States on the issue of whether the "applicable commitment period" provided by 11 U.S.C. § 1325(b)(4)[5] is a strictly temporal requirement for all debtors, including those with zero or negative

[5] Section 1325(b)(4) provides that the term "applicable commitment period,"

(A) subject to subparagraphs (B), shall be –
(i) 3 years; or
(ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than –
(I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
(II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
(III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $625 per month for each individual in excess of 4; and
(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims

projected disposable income as calculated by the means test, such that below-median income debtors must propose a plan of at least thirty-six (36) months in length and above-median debtors must propose a plan of at least sixty (60) months in length. While the Supreme Court did not address the definition of the phrase "applicable commitment period" in *Lanning*, other courts have cited the Supreme Court decision to support a temporal interpretation of the "applicable commitment period." For instance, the Eleventh Circuit in *In re Tennyson*, 611 F.3d 873 (11th Cir. 2010), held that the applicable commitment period mandates a minimum duration for an above-median income debtor's Chapter 13 plan. *Id.* at 874. The Circuit Court reasoned that "*Lanning* does not directly comment on the definition of 'applicable commitment period' but what it does indicate is that § 1325(b) is not a strict mechanical formula existing in a vacuum." *Id.* With such a flexible approach, the Eleventh Circuit concluded that "in order for 'applicable commitment period' to have any definite meaning, its definition must be that of a temporal term derived from § 1325(b)(4)." *Id*. at 879. The Eleventh Circuit did not make a distinction between positive and negative disposable income and applied the temporal approach to all debtors. *Id.*

The Sixth Circuit in *Baud v. Carroll* noted that in *Lanning*, the Supreme Court relied on the "lack of explicit multiplier language in §1325(b)(1)" to adopt a forward-looking approach and that a similar lack of multiplier language supports a temporal reading of § 1325(b). *Baud v. Carroll*, 634 F.3d 327, 339 (6th Cir. 2011). There, the Sixth Circuit relied on the language in *Lanning* and *Ransom* to require a five (5) year applicable commitment period upon the above-median income debtor whose disposable income was less than zero. *Id*. at 351. Adding to the confusion, the Ninth

---

over a shorter period.

11 U.S.C. § 1325(b)(4).

Circuit confirmed a thirty-six (36) month plan for above-median debtors with no projected disposable income but then ordered an *en banc* rehearing of the issues on appeal in *Danielson v. Flores (In re Flores)*, 692 F.3d 1021 (9th Cir. 2012), *reh'g granted*, ___ F.3d ___, No. 11-55452, 2012 WL 6618328 (9th Cir. Dec. 19, 2012). The rehearing is set for March 18, 2013.

The United States District Court for the Eastern District of North Carolina addressed the applicable commitment period in *Musselman v. eCast Settlement Corp.*, 394 B.R. 801 (E.D.N.C. 2008). In *Musselman*, the court addressed the issue of whether the applicable commitment period as defined in § 1325(b)(4) determined the length of the plan regardless of the debtor's projected disposable income. The *Musselman* Court held that debtors who have no projected disposable income also have no applicable commitment period for purposes of § 1325(b). *Id.* at 814. While *Musselman* speaks directly to the issue at hand, it was decided pre-*Lanning*. This Court discussed the *Lanning*, *Ransom*, and *Quigley* decisions as well as lower court interpretations of these decisions in *In re Sterrenberg*, explaining, "taken together, this recent line of cases departs from the strict formulaic approach to the means test and takes into account what is likely to occur in the future." *In re Sterrenberg*, Case No. 11-08543-8-RDD, 2012 WL 1835183, at *5 (Bankr. E.D.N.C. May 18, 2012). Therefore, in *Pliler*, this Court was compelled to adopt a forward-looking approach to determine projected disposable income and hold that the applicable commitment period is a temporal requirement for all debtors. Additionally, in *Pliler*, the Court concluded that had *Lanning*, *Ransom*, *Quigley*, *Sterrenberg*, *Baud*, and *Tennyson* been decided prior to the District Court's holding in *Musselman* regarding the applicable commitment period, the District Court would not have reversed this Court's holding in *In re Musselman*. Surely if Congress intended for plans to contain these early

termination provisions, Congress would have certainly said so.[6] Therefore, the Court is left with no controlling decision for guidance.

**B. The Judgment, Order, or Decree Involves a Question of Law Requiring Resolution of Conflicting Decisions Pursuant to 28 U.S.C. § 158(d)(2)(A)(ii)**

In addition, *Pliler*, holding that the early termination language is contrary to the temporal applicable commitment period creates a conflict in the Eastern District of North Carolina with the decisions in *In re Ballew* and *In re Temple*. These issues are pressing in this district because without instruction from the Fourth Circuit, attorneys in the Eastern District of North Carolina, will continue to use *In re Alexander* and *Musselman v. eCast Settlement Corporation* as precedent to formulate plans that terminate prior to the applicable commitment period provided by § 1325(b)(4). *In re Alexander*, 342 B.R. 742 (Bankr. E.D.N.C. 2006) (holding the term applicable commitment period is relevant only in regard to projected disposable income to unsecured creditors and if a debtor has no projected disposable income the applicable commitment period does not come into play); *Musselman v. eCast Settlement Corp. (In re Musselman)*, 394 B.R. 801 (E.D.N.C. 2008) (finding debtors who have no projected disposable income also have no applicable commitment period for purposes of § 1325(b)). The inclusion of the early termination language in the Debtors' plan is in direct conflict with § 1325(b)(4)(B), unless unsecured creditors are paid in full. This Court's decision in *Pliler* all but prevents attorney's from filing plans that include the early termination language, while *Ballew* and *Temple* allow the practice to continue.

Additionally, the majority of courts which have addressed the issue of the applicable

---

[6] For instance, § 1325(b)(4)(B), is the only statutorily permitted termination of the applicable commitment period prior to the expiration of the applicable commitment period, which provides unsecured creditors must be paid in full.

commitment period pursuant to § 1325(b)(4), have found that the applicable commitment period is a temporal requirement that applies to all debtors, and therefore, a plan must continue for either three (3) or five (5) years, depending on whether a debtor has above or below-median income. *In re Girodes*, 350 B.R. 31, 35 (Bankr. M.D.N.C. 2006) (finding "the term 'period' implies time period rather than amount"); *In re Crittendon*, No. 06-10322 C-13G, 2006 WL 2547102, at *5 (Bankr. M.D.N.C. 2006) (applicable commitment period is a temporal requirement); *In re Houser*, No. 07-50529, 2007 WL 6404340, at *3 (Bankr. W.D.N.C. Dec. 14, 2007) (explaining majority view is that the applicable commitment period is a temporal requirement but declining to decide the issue as it was not ripe); *In re Cushman*, 350 B.R. 207, 213 (Bankr. D.S.C. 2006) (Congress intended the commitment period to be the length of time for a debtor to perform under the plan, not a multiplier); *In re Moose*, 419 B.R. 632 (Bankr. E.D. Va. 2009); *In re Hylton*, 374 B.R. 579 (Bankr. W.D. Va. 2007).

**IV. Good Faith**

**A. The Judgment, Order, or Decree Involves a Question of Law to Which There is No Controlling Decision of the Court of Appeals for the Circuit or of the Supreme Court of the United States, or Involves a Matter of Public Importance Pursuant to 28 U.S.C. § 158(d)(2)(A)(i)**

The practice of filing plans including language that allows payment to terminate after costs of administration and payments to secured debts are complete raises good faith issues pursuant to 11 U.S.C. § 1325(a)(3), (7) because the plans are proposed in direct violation of a provision of the Bankruptcy Code. Additionally, by using the early termination language, attorneys in this district have developed attorney fee only plans, which provide for payment of attorneys' fees and the trustee's commission without curing arrearages on secured debts or paying a dividend to unsecured

creditors. *See In re Tedder*, No. 12-06232-8-RDD, 2013 WL 145416 (Bankr. E.D.N.C. Jan. 14, 2013); *In re Mathis*, No. 12-05618-8-RDD, 2013 WL 153833 (Bankr. E.D.N.C. Jan. 15, 2013); *In re Barnes*, No. 12-06613-8-RDD, 2013 WL 153848 (Bankr. E.D.N.C. Jan. 15, 2013). Such plans bring good faith issues to the forefront as they contravene the purpose and intent behind BAPCPA. *See Ransom v. FIA Card Servs. N.A.*, ___ U.S. ___, 131 S. Ct. 716, 725 ("Congress designed the means test to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford.'") (quoting H.R.Rep No. 109-31, pt. 1 p. 2 (2005)). The Fourth Circuit requires courts to examine the totality of the circumstances to determine whether a plan has been proposed in good faith. *Deans v. O'Donnell (In re Deans)*, 692 F.2d 968, 972 (4th Cir. 1982).

In his request, the Trustee poses one of the issues as whether proposing a plan that terminates early after paying only attorneys' fees, priority claims, secured claims, and the trustee's commission and discharges significant portions of unsecured debt despite ability to pay, can be proposed in good faith pursuant to § 1325(a)(3) and whether the petition was filed in good faith pursuant to § 1325(a)(7).[7] In this case, the Debtors' plan included arrearage claims that would be paid through

---

[7] In the Request for Certification of Issue for Direct Appeal, the Trustee notes one of the issues on appeal is:

> [w]hether a Chapter 13 plan with "early termination language" that proposes to terminate early after paying only attorneys' fees, priority claims, secured claims, and the trustee's commission and thereby discharges significant portions of unsecured debt despite a debtor's actual ability to pay something toward unsecured creditors can be proposed in good faith under 11 U.S.C. § 1325(a)(3) and 11 U.S.C. § 1325(a)(7).

Req. for Certification of Issue for Direct Appeal, 3, *In re Pliler*, No. 12-05844-8-RDD (Bankr. E.D.N.C. Feb. 1, 2013).

the plan in addition to attorneys' fees and the trustee's commission.[8] However, in other cases before this Court, the plans only included payment of attorneys' fees and the trustee's commission. *See In re Tedder*, 2013 WL 145416; *In re Mathis*, 2013 WL 153833; *In re Barnes*, 2013 WL 153848. These so called "attorney fee only" cases are highly indicative of bad faith if not per se bad faith. *See e.g., In re Arlen*, 461 B.R. 550 (Bankr. W.D. Mo. 2011) ("[Attorney fee only Chapter 13] cases are little more than disguised Chapter 7 proceedings. Utilizing Chapter 13 in this fashion blurs the distinctions between the two chapters and the various differences in their scope and purpose as reflected by the different applicable statutory provisions."); *In re Jackson*, 2012 WL 909782 (Bankr. N.D. Ala. 2012) (finding a lack of good faith where only a small payment would be made to unsecured creditors, with the bulk of funds going to the Debtor's lawyer and noted that when a plan seeks to only make nominal payments, or no payments at all, to unsecured creditors, it is only seen as being proposed in good faith when some exceptional circumstances are present).[9]

Neither the Fourth Circuit nor the Supreme Court have addressed the issue of whether a

---

[8] In *Pliler*, this Court did not specifically discuss the good faith issue as the Court found that the early termination language was contradictory to the requirements of calculating the projected disposable income and the applicable commitment period. However, the holding in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) would otherwise require a good faith analysis by the court.

[9] Except for the curing of arrearages and payment of secured claims, *Pliler* would be an attorney fee only case. The vast majority of case law nationally finds attorney fee only Chapter 13 cases do not, on their face, meet the good faith requirements of 11 U.S.C. § 1325. *See In re Jackson*, Nos. 11-42528-JJR-13, 11-42825-JJR-13, 2012 WL 909782 (Bankr. N.D. Ala. Mar. 16, 2012); *In re Ingram*, No. 11-13216, 2012 WL 10812 (Bankr. N.D. Cal. Jan. 3, 2012) *aff'd sub nom. Brown v. Gore*, ; *In re Arlen*, 461 B.R. 550 (Bankr. W.D. Mo. 2011); *In re Buck*, 432 B.R. 13 (D. Mass. 2010); *In re Sanchez*, No. 13-09-10955 MA, 2009 WL 2913224 (Bankr. D.N.M. May 19, 2009); *In re Lehnert*, No. 07-55988, 2009 WL 1163401 (Bankr. E.D. Mich. Jan. 14, 2009); *In re Montry*, 393 B.R. 695 (Bankr. W.D. Mo.2008); *In re Paley*, 390 B.R. 53 (Bankr. N.D.N.Y.2008); *In re Dicey*, 312 B.R. 456 (Bankr. D.N.H. 2004).

debtor with zero or negative projected disposable income acts in good faith by proposing a plan that terminates prior to the expiration of the debtor's applicable commitment period. The Fourth Circuit did address the issue of good faith in *Deans v. O'Donnell (In re Deans)*, 692 F.2d 968, 972 (4th Cir. 1982), where it found courts must examine whether a plan has been proposed in good faith based on the totality of the circumstances. In *Deans*, the Fourth Circuit addressed the issue of whether 11 U.S.C. § 1325(a)(3) requires that all plans must provide substantial and meaningful repayment to the debtor's unsecured creditors. *Id.* at 969. The Court concluded that the plain language of the statute does not impose a per se rule of substantial repayment into the "good faith" requirement in every case. *Id.* at 970. Therefore, no controlling precedent exists on the issues involved in *Pliler.*

**B. The Judgment, Order, or Decree Involves a Question of Law Requiring Resolution of Conflicting Decisions Pursuant to 28 U.S.C. § 158(d)(2)(A)(ii)**

In the present case, the Debtors' plan includes secured claims, so it is not a Chapter 13 case case filed solely for the purpose of discharging unsecured debts and paying only attorneys' fees, but the plan does propose to terminate prior to payment of unsecured creditors and in direct contravention of § 1325(b)(4). Therefore, good faith issues pursuant to § 1325(a)(3), (7) arise in conjunction with the question of whether the applicable commitment period applies to debtors with zero or negative disposable income on Form B22C. As previously discussed, these plans that include early termination language allow debtors to seek a discharge while paying no dividend to unsecured creditors. In *Ballew* and *Temple*, the other two (2) courts in the Eastern District of North Carolina authorized the use of early termination language to end a plan with no payment to unsecured creditors. *In re Ballew*, No. 12-04059-8-JRL, 2013 WL 142378, at *4 (Bankr. E.D.N.C. Jan. 11, 2013); *In re Temple*, No. 12-4049-8-SWH, 2013 WL 308971 (Bankr. E.D.N.C. Jan. 23,

2013). The result creates greater conflict within the district as debtors who file cases in divisions where *Ballew* and *Temple* are controlling may choose to propose a plan that terminates early, while cases filed in the divisions where *Pliler* is controlling may not. Such conflicting decisions complicate the administration of Chapter 13 plans by the Chapter 13 trustees. Accordingly, the Court finds there is sufficient conflict within the district to warrant certification to the court of appeals pursuant to 28 U.S.C. § 158(d)(2)(A)(ii).

Further, similar to the Eastern District of North Carolina, the issue of whether a plan is filed in good faith also creates conflict in the bankruptcy court for the Eastern District of Virginia. In *In re Kelly*, the court held that meeting the disposable income test alone does not mean a debtor has satisfied the good faith requirement of § 1325(a)(3) if it is clear a debtor could reasonably afford a larger plan payment. *In re Kelly*, 416 B.R. 232, 238 (Bankr. E.D. Va. 2009) (denying confirmation of a plan that proposed a plan payment of $1,805.00 when the debtor's schedules indicated he had income of $7,405.00 and expenses of $3,324.00, for a monthly surplus of $4,081.00); *see also In re Degrosseilliers*, No. 08-10942-SSM, 2008 WL 2725808 at *3 n. 7 (Bankr. E.D. Va. July 11, 2008). This is in direct conflict with the court in *In re Winokur*, which followed *In re Alexander* and found that if a "debtor proposes to pay the amount Congress requires by the mathematical formula, the debtor has complied with the good faith requirement." *In re Winokur*, 364 B.R. 204, 206 (Bankr. E.D. Va. 2007) (confirming an above-median debtor's plan that provided for payment greater than or equal to the amounts computed under § 1325(b)(2) but less than the debtor's actual net disposable income). Such conflict among districts is further cause to certify the appeal directly to the Fourth Circuit.

**V. An Immediate Appeal from the Judgment, Order, or Decree May Materially Advance**

**the Progress of the Case or Proceeding in Which the Appeal is Taken Pursuant to 28 U.S.C. § 158(d)(2)(A)(iii)**

The order entered in *Pliler* instructed the Trustee to file a motion for confirmation for a plan of $1,784.00 per month for sixty (60) months with no early termination language. The Debtors filed a motion for leave to appeal to the district court for the Eastern District of North Carolina. Should the district court grant leave to appeal, the Trustee would be stayed from filing a motion for confirmation as directed by the Court's order. The bankruptcy proceeding would then be delayed until further order is entered by the district court. While the Debtors are required by 11 U.S.C. § 1326(a)(1) to commence making payments to the Trustee within thirty (30) days after the date of the filing of the petition, the payments made under § 1326(a)(1) "shall be retained by the trustee until confirmation or denial of confirmation." 11 U.S.C. § 1326(a)(2). Thus, certifying the issue directly to the Fourth Circuit would reduce any longer delay of confirmation of the plan and distributions to creditors. Accordingly, direct appeal to the Fourth Circuit would materially advance the progress of the bankruptcy proceeding by allowing the Debtors to have a decision from only one appeal to the Fourth Circuit.

**CONCLUSION**

Accordingly, for the foregoing reasons, the Trustee's Request for Certification of Issue for Direct Appeal is **GRANTED**. Further, pursuant to 28 U.S.C. § 158(d)(2), the Court, on its own initiative, certifies the following issues for direct appeal to the United States Court of Appeals for the Fourth Circuit:

(1) Whether in calculating a debtor's "projected disposable income" pursuant to § 1325(b), the bankruptcy court should follow the "forward-looking" approach to reflect a debtor's

actual ability to pay and consider changes in income and expenses that are known or virtually certain at the time of confirmation?

(2) Whether the term "applicable commitment period" refers to a temporal requirement such that an above-median debtor must propose a plan no shorter than sixty (60) months and a below-median debtor must propose a plan no shorter than thirty-six (36) months as provided by § 1325(b)(4)?

(3) Whether a plan that includes "early termination language" that ends after payments of administrative expense claims, the trustee's commission, and secured claims but provides no payment to unsecured creditors is proposed in good faith pursuant to 1325(a)(3), (7)?

**SO ORDERED.**

**END OF DOCUMENT**