**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1445

JOE HENRY PLILER; KATHERINE MARIE PLILER,

        Debtors - Appellants,

   v.

RICHARD M. STEARNS, Trustee,

        Trustee – Appellee.

-------------------------------

NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS,

        Amicus Supporting Appellants,

ECAST SETTLEMENT CORPORATION,

        Amicus Supporting Appellee.

Appeal from the United States Bankruptcy Court for the Eastern District of North Carolina, at Wilson.   Randy D. Doub, Chief Bankruptcy Judge.   (12-05844-8-RDD)

Argued:   December 10, 2013              Decided:   March 28, 2014

Before DUNCAN, WYNN, and THACKER, Circuit Judges.

Affirmed and remanded by published opinion.  Judge Wynn wrote the opinion, in which Judge Duncan and Judge Thacker joined.

**ARGUED:** Robert Lee Roland, IV, LAW OFFICES OF JOHN T. ORCUTT, P.C., Raleigh, North Carolina, for Appellants. Christopher Scott Kirk, OFFICE OF THE BANKRUPTCY ADMINISTRATOR, Wilson, North Carolina; Isaac Andrew Johnston, OFFICE OF THE CHAPTER 13 TRUSTEE, Greenville, North Carolina, for Appellee. **ON BRIEF:** Norma L. Hammes, NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS, San Jose, California; Tara Twomey, NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER, San Jose, California, for Amicus National Association of Consumer Bankruptcy Attorneys. William Andrew McNeal, Gilbert B. Weisman, BECKET & LEE LLP, Malvern, Pennsylvania, for Amicus eCAST Settlement Corporation.

WYNN, Circuit Judge:

In this bankruptcy appeal, we must decide whether above-median-income debtors with negative disposable income are obligated to maintain Chapter 13 bankruptcy plans that last for five years when their unsecured creditors have not been paid in full. Our examination of the pertinent bankruptcy code provisions, case law, and legislative intent leads us to conclude that the answer is yes and, accordingly, to affirm the bankruptcy court's order.

I.

Joe Henry Pliler and Katherine Marie Pliler (the "Plilers") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on August 10, 2012. Although the Plilers calculated their household income to be above North Carolina's median family income for comparably-sized households, they calculated their disposable income to be negative $291.20.

Along with the Chapter 13 petition, the Plilers filed a proposed Chapter 13 plan pursuant to 11 U.S.C. § 1321 ("Plan"). Under the Plan, the Plilers proposed to pay $1,784 for fifteen months, and then $1,547 for forty months. The total of these payments, $88,640, would pay $3,335 in attorneys' fees, $3,988.80 for the Trustee's commission, $78,595 to secured creditors, and nothing to unsecured creditors.

The Plilers' proposed Plan contained early termination language that would have allowed them to complete their Plan within fifty-five months:

> This Chapter 13 Plan will be deemed complete and shall cease and a discharge shall be entered, upon payment to the Trustee of a sum sufficient to pay in full: (A) Allowed administrative priority claims, including specifically Trustee's commissions and attorneys' fees and expenses ordered by the Court to be paid to the Debtor's Attorney, (B) allowed secured claims (including but not limited to arrearage claims), excepting those which are scheduled to be paid directly by the Debtor "outside" the plan, (C) Allowed unsecured priority claims, (D) Cosign protect consumer debt claims (only where the Debtor proposes such treatment), (E) Postpetition claims allowed under 11 U.S.C. § 1305, (F) The dividend, if any, required to be paid to non-priority general unsecured creditors (not including priority unsecured creditors) pursuant to 11 U.S.C. § 1325(b)(1)(B), and (G) Any extra amount necessary to satisfy the "liquidation test" as set forth in 11 U.S.C. §1325(a)(4).

J.A. 65.

In October 2012, the Trustee filed an objection to confirmation of the Plan and a motion to dismiss for failure to file a plan in good faith and failure to pay an amount necessary during the applicable commitment period to comply with Section 1325. Similar motions were filed in other cases pending in the Eastern District of North Carolina, and three different bankruptcy judges in the district chose to conduct a joint hearing to consider the matters.

4

Regarding the Plilers' case, on January 15, 2013, Chief Bankruptcy Judge Randy Doub entered an order denying the objection and motion to dismiss and directing the Trustee to file a motion for confirmation of a plan requiring the Plilers to pay $1,784 per month for sixty months with no early termination language. In re Pliler, 487 B.R. 682 (Bankr. E.D.N.C. 2013). Under the Plan as revised by Judge Doub, the unsecured creditors would receive an eighty-four-percent dividend, as opposed to the zero-percent dividend in the Plan as proposed by the Plilers. In ordering the revision of the Plan, Judge Doub held, among other things, that 11 U.S.C. § 1325(b)'s "applicable commitment period" is a temporal requirement mandating that an above-median-income debtor commit to a sixty-month plan period irrespective of projected disposable income.

This direct appeal to the Fourth Circuit ensued. We review de novo challenged legal issues, including statutory interpretation questions such as those before us here. Johnson v. Zimmer, 686 F.3d 224, 227 (4th Cir. 2012), cert. denied, 133 S. Ct. 846 (2013).

II.

A.

In Chapter 13 reorganization proceedings, debtors commit to a court-approved plan to repay creditors with future income. Hamilton v. Lanning, 560 U.S. 505, 508 (2010). Bankruptcy Code Section 1325 specifies circumstances under which a bankruptcy court "shall" and "may not" confirm a Chapter 13 plan. Id. See also 11 U.S.C. § 1325(b).

In cases where the trustee or an unsecured creditor objects to the confirmation of a proposed Chapter 13 plan, the court may not confirm the plan unless one of two conditions is met. The second condition, at the heart of this case, is that "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1) (emphasis added).[1]

The statute defines "applicable commitment period" as:

(i) 3 years; or

(ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—

---

[1] The first condition, which is not in play here, is that "the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim. . . ." Id.

> * * *
>
> (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>
> * * *
>
> B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

11 U.S.C. § 1325(b)(4).

In this case, the Trustee objected to the Plilers' proposed Plan with its early termination provision. Further, it is undisputed that the Plilers' proposed Plan did not "provide[] for payment in full of all allowed unsecured claims[,]" 11 U.S.C. § 1325(b)(4); in fact, the Plan provided for no payment to unsecured creditors. Thus, Section 1325(b)(4)'s exception does not apply. At issue, then, is whether the Plilers' Plan may terminate after less than five years.

1.

The Plilers argue that the bankruptcy court "erred in holding that . . . the definition of applicable commitment period in 11 U.S.C. § 1325(b)(4) is a freestanding plan length requirement." Appellants' Br. at 3. We disagree. We, like all the other circuits to have addressed this issue, hold that an "applicable commitment period" is a temporal requirement. See

7

In re Flores, 735 F.3d 855, 856 (9th Cir. 2013) (en banc); Baud v. Carroll, 634 F.3d 327, 338 (6th Cir. 2011); Whaley v. Tennyson, 611 F.3d 873, 880 (11th Cir. 2010); Coop v. Frederickson, 545 F.3d 652, 660 (8th Cir. 2008).[2]

As in all statutory interpretation cases, we "necessarily begin[] with an analysis of the language of the statute. And, in analyzing the meaning of a statute, we must first determine whether the language at issue has a plain and unambiguous meaning." Holland v. Big River Minerals Corp., 181 F.3d 597, 603 (4th Cir. 1999) (quotation marks and citation omitted). If it does, we look no further but simply "enforce [the statute] according to its terms." Id. (quotation marks omitted).

Applying these principles to "applicable commitment period," we agree with the Eleventh Circuit that "'applicable' and 'commitment' are modifiers of the noun, the core substance of the term, 'period.' The plain meaning of 'period' denotes a period of time or duration." In re Tennyson, 611 F.3d at 877 (citation omitted). As for the modifier "commitment," that

---

[2] In their briefs, the Plilers relied on In re Flores, 692 F.3d 1021 (9th Cir. 2012), and In re Kagenveama, 541 F.3d 868 (9th Cir. 2008). In those cases, the Ninth Circuit had held that the applicable commitment period did not constitute a freestanding plan length requirement. But the Ninth Circuit overruled In re Kagenveama and vacated the In re Flores panel decision in favor of the en banc In re Flores opinion going precisely the opposite way on this issue. In re Flores, 735 F.3d 855. Those earlier cases are thus no longer good law, and the circuit split they created no longer exists.

8

signifies that "'applicable commitment period' is a duration to which the debtor is obligated to serve. Finally, the meaning of 'applicable' reflects the fact that there are alternate 'commitment periods' depending on the debtor's classification as an above median income debtor or a below median income debtor." Id. (citation omitted).

Further, the statute defines applicable commitment period in terms of duration: "3 years," "not less than 5 years," or "less than 3 or 5 years," depending on current monthly income and whether unsecured creditors will be paid under the plan. 11 U.S.C. § 1325(b)(4). Putting it all together, then, an "applicable commitment period" is an obligatory period of time that may vary based on the debtor's income and plan provisions. Stated differently, it is a "freestanding plan length requirement." Appellants' Br. at 3.

While we find a plain reading alone sufficient to conclude that an "applicable commitment period" is a length-of-time requirement for Chapter 13 plans, we nevertheless note that our conclusion harmonizes with the "core purpose" underpinning the 2005 bankruptcy code revisions from which the "applicable commitment period" provisions hail: "ensuring that debtors devote their full disposable income to repaying creditors." Ransom v. FIA Card Servs., N.A., 131 S. Ct. 716, 729 (2011). See also In re Tennyson, 611 F.3d at 879 ("'The heart of [the

9

pertinent] consumer bankruptcy reforms . . . is intended to ensure that debtors repay creditors the maximum they can afford.' H.R. Rep. 109-31(I), p. 2, 2005 U.S.C.C.A.N. 88, 89."). This core purpose is best effectuated when Chapter 13 plans must last for three or five years, depending on the debtors' income, unless all unsecured claims are fully repaid sooner.

2.

The Plilers nevertheless press that no "applicable commitment period" governs their case because they have negative disposable income. Here, too, we disagree.

Again, we "necessarily begin[] with an analysis of the language of the statute." Holland, 181 F.3d at 603. As already discussed, a plain reading leads us to conclude that an "applicable commitment period" is a length-of-time requirement for Chapter 13 plans. The time requirement is either three years or five years, depending on the debtor's (and the debtor's spouse's) "current monthly income[.]"  11 U.S.C. § 1325(b)(4). The plan may be shortened, "but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." Id.  Nothing in Section 1325(b)(4) suggests that the applicable commitment period is somehow related to, much less dictated by, the debtor's projected disposable income. See id. And we see no indication of some special exception for above-median-income debtors with no projected disposable income.

10

The Plilers attempt to overcome that problem by blending Section 1325(b)(4)'s applicable commitment period with Section 1325(b)(1), which mandates that "all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors . . . ." 11 U.S.C. § 1325(b)(1). The Plilers argue that because their monthly disposable income as calculated on a bankruptcy form filed with their bankruptcy petition, Form 22C, showed negative $291.20, no "projected disposable income" will be received "in the applicable commitment period," rendering the plan length requirement senseless.

Yet the lack of projected disposable income at the time a plan is confirmed does not necessarily mean that additional funds with which to satisfy claims will not later surface. Indeed, as we recently saw in Carroll v. Logan, Chapter 13 debtors can and do benefit from windfalls such as inheritances or other unforeseeable income after plan confirmation but before their Chapter 13 proceedings are closed. 735 F.3d 147, 152 (4th Cir. 2013) (holding that bankruptcy code "blocks the [debtors] from depriving their creditors a part of their windfall [an inheritance] acquired before their Chapter 13 case was closed"). A five-year plan duration thus still makes sense, and may still result in gains for creditors, even if the debtors have zero or

11

negative disposable income at the time of plan confirmation. See also, e.g., Baud, 634 F.3d at 356 ("[T]here are numerous circumstances in which disposable income might become available to the Appellees and to other debtors after confirmation, even those who have zero or negative projected disposable income as of confirmation.").

The Plilers also contend that the "'applicable commitment period' exists solely for its function within the confines of § 1325(b)(1)(B)[,]" Appellants' Br. at 34, which, again, mandates that "all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors . . . ." 11 U.S.C. § 1325(b)(1). The Plilers claim that Section 1325(b)(1) "is the only relevant section of the [Bankruptcy] Code that puts the term into action and applies it to debtors." Appellants' Br. at 35. But this contention is belied by the statute that allows for post-confirmation plan modification: Section 1329.

Specifically, Section 1329 expressly incorporates the applicable commitment period as a temporal limit for purposes of plan modification. Under Section 1329(a), a bankruptcy court may modify a plan at any time after plan confirmation and before the completion of plan payments. 11 U.S.C. § 1329(a). As we saw in Carroll, for example, Section 1329 modification may be used to increase plan payments to creditors in the event that

12

the debtors come into additional, unforeseen income. 735 F.3d 147. But a modified plan "may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due . . . ." 11 U.S.C. § 1329(c). The modification statute thus "defines the temporal window within which modified payments . . . may be made by reference to the applicable commitment period." In re Flores, 735 F.3d at 859-60. In other words, for purposes of plan modification, the applicable commitment period appears to serve as a measure of plan duration wholly unrelated to debtors' disposable income.

    In sum, we hold that a plain reading of the Bankruptcy Code, and Section 1325 in particular, mandates that an above-median-income debtor maintain a bankruptcy plan for five years unless all unsecured creditor claims are paid in full and irrespective of projected disposable income. The Plilers, above-median-income debtors, are thus obligated to maintain a five-year plan. The bankruptcy court therefore did not err in deeming the early termination language in the Plilers' proposed plan void as a matter of law and in extending the duration of the Plilers' proposed Plan from fifty-five to sixty months, i.e., to five years.

13

B.

With their next argument, the Plilers contend that the bankruptcy court erred by looking beyond their Form 22C's negative disposable income calculation to examine their Schedules I and J in evaluating their projected disposable income.

On the one hand, we find problematic the bankruptcy court's broad statement suggesting that it is at liberty to abandon completely the Bankruptcy Code's disposable income formula in favor of Schedules I and J, at least when debtors have no disposable income. See In re Pliler, 487 B.R. at 692 ("If disposable income is zero or less, the court must look to projected disposable income based on income minus expenses from Schedules I and J to determine what actual income or expenses are known or virtually certain at the time of confirmation."). Schedules I and J, which list current income and current expenditures, may contain items—such as social security income—that Congress excluded from disposable income. Baud, 634 F.3d at 345. It is troubling to suggest that a court may "disregard" such an exclusion "simply because there is a disparity between the amount calculated using th[e] [disposable income] definition and the debtor's actual available income as set forth on Schedule I." Id.

On the other hand, however, we recognize that projected disposable income and disposable income are, even simply on their face, not identical, with disposable income based on a debtor's past and projected disposable income being a "forward-looking" concept that may account for "known or virtually certain" changes to a debtor's income or expenses. Lanning, 560 U.S. at 515. See also Morris v. Quigley, 673 F.3d 269 (4th Cir. 2012) (relying on Lanning to hold that debtor's projected disposable income must reflect debtor's intention to surrender vehicles on which she had been making secured debt payments and which had impacted her disposable income calculation). And we do not doubt a bankruptcy court's ability to consider Schedule I, Schedule J, or other pertinent evidence to capture "known or virtually certain" changes to disposable income: After all, the Supreme Court itself did so in Lanning. Lanning, 560 U.S. at 511.

In this case, however, the bankruptcy court relied on the Plan payment figure the Plilers themselves had proposed. In the face of negative disposable income per Form 22C, the Plilers professed in their proposed Plan that they could make payments of $1,784 per month, at least for fifteen months. The bankruptcy court's order effectively stretched that figure out to the full five-year applicable commitment period it correctly

15

deemed a requirement. Nothing before us convinces us that the bankruptcy court erred in so doing.

In sum, we affirm the bankruptcy court's order. However, because the order was rendered at a joint session dealing with other cases and addressing only the common legal issues, it appears as if the Plilers did not receive an individualized hearing with an opportunity to present evidence. Thus, to the extent the Plilers have not yet been given an opportunity to present evidence regarding, e.g., the feasibility of a $1,784-per-month, five-year Plan (and both parties indicated at oral argument that they had not), that opportunity must be made available on remand.

### III.

For the foregoing reasons, we affirm the bankruptcy court's order and remand the case for further proceedings.

<u>AFFIRMED AND REMANDED</u>